UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MOHAMMAD HASAN HUSSAINI,

Petitioner,

v.

LAURA HERMOSILLO, et al.,,

Respondents.

Case No. 2:26-cv-00485-TLF

ORDER GRANTING PETITION FOR A WRIT OF HABEAS CORPUS IN PART (DKT 2).

Petitioner Mohammad Hasan Hussaini is a native and citizen of Afghanistan who is detained by U.S. Immigrations and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. Dkt. 2 at 8-10; Dkt. 4 at 2-4. He petitions for a writ of habeas corpus under 28 U.S.C. § 2241. Dkt. 2.

Petitioner alleges respondents re-detained him in violation of the Due Process Clause of the Fifth Amendment under *Mathews v. Eldridge*, 424 U.S. 319 (1976). *E.g.* Dkt. 2 at 15, 17. Respondents urge this Court to deny the petition, primarily asserting that the Department of Homeland Security ("DHS") "has designated Petitioner as a known or suspected terrorist ('KST') and determined that he poses a threat to national security." *E.g.* Dkt. 4 at 1-2; Dkt. 6-2 (Form I-213).

The parties unanimously consent to the jurisdiction of a Magistrate Judge. Dkt. 14. As elaborated below, the Court **GRANTS IN PART** the petition and **ORDERS**

ORDER GRANTING PETITION FOR A WRIT OF
HABEAS CORPUS IN PART (DKT 2). - 1

respondents to provide a prompt post-deprivation hearing to petitioner within **10 days** of this order (*see* Fed. R. Civ. P. 6(a)(1)).

## I.    BACKGROUND

Petitioner is a native and citizen of Afghanistan. Dkt. 2 at 8; Dkt. 4 at 2. On September 11, 2023, petitioner entered the United States. Dkt. 2 at 8; Dkt. 4 at 2. That same day, petitioner was detained and conditionally released. Dkt. 2 at 8; Dkt. 4 at 2; Dkt. 5 at 2. Respondents state this conditional release required reporting to Alternatives to Detention ("ATD"). Dkt. 4 at 2; Dkt. 5 at 2.

On May 22, 2025, petitioner was re-detained by respondents. Dkt. 2 at 9; Dkt. 4 at 3. Respondents' Form I-213 alleged petitioner's re-detention was warranted based on his KST designation and him violating his release conditions. Dkt. 6-2; *see also* Dkt. 5 (deportation officer declaration asserting the same).

Regarding petitioner's alleged KST status, the Form I-213 asserts that on "May 18, 2025, [petitioner] came to the attention of Enforcement and Removal Operations (ERO) Los Angeles pursuant to a referral from the Pacific Enforcement Response Center (PERC), identifying [petitioner] as a Known Suspected Terrorist and possible Transnational Criminal Organization (TCO) actor." Dkt. 6-2 at 4. Petitioner was thus re-detained "pursuant to a Warrant of Arrest . . . as a National Security Interest Case – Known or Suspected Terrorist (KST)." Dkt. 6-2 at 3; Dkt. 6-3 (warrant). Respondents' briefing and other filings do not substantively elaborate on the basis of this alleged KST designation. *E.g.*, Dkt. 4 at 2-3, 6-8, 11-12; Dkt. 5 at 3; Dkt. 6-2 at 3-4; *see also* Dkts. 12, 16-18, 24.

ORDER GRANTING PETITION FOR A WRIT OF
HABEAS CORPUS IN PART (DKT 2). - 2

Regarding release conditions, the Form I-213 asserts that on "March 29, 2024, [petitioner] failed to report in person as instructed" meaning "ATD placed [petitioner] as an active absconder." Dkt. 6-2 at 4.

On August 27, 2025, an Immigration Judge ("IJ") granted petitioner asylum. Dkt. 4 at 4; Dkt. 9 at 2; Dkt. 9-2 at 4, 10. On September 25, 2025, DHS appealed the IJ's asylum order to the Board of Immigration Appeals ("BIA"). Dkt 9-1.

DHS' appellate briefing on petitioner's asylum claim focuses on challenging petitioner's credibility[1] and did not discuss petitioner's alleged KST designation. *See* Dkt. 9-2. Petitioner's counsel for these asylum proceedings also alleges that "[a]t the merits hearing, held on August 27, 2025," DHS' counsel "stated on the record that [petitioner] had passed the required background checks." Dkt. 9 at 2; *see also* 8 C.F.R. §§ 1003.47(a), (c) (requiring applicants to "provide biometrics and other biographical information" to "ensure that DHS has completed the appropriate identity, law enforcement, or security investigations or examinations . . ."); *see also* 8 U.S.C. § 1158(b)(2)(A)(iv) (excluding applicants from receiving asylum if "there are reasonable grounds for regarding the [noncitizen] as a danger to the security of the United States."). Petitioner's asylum counsel further alleges that "[a]t no point during the removal proceedings did DHS assert that Mr. Hussaini was a [KST] or otherwise present a national security concern." Dkt. 9 at 2.

---

[1] Specifically, DHS argues the IJ "erred in finding the respondent credible when his testimony revealed multiple omissions," "when he failed to produce readily available corroborating evidence," and because "respondent admitted on cross-examination that he and his wife were involved in a domestic violence incident" which they urged required at least a "remand[] for the respondent to provide additional evidence of his potential criminal activity . . ." Dkt. 9-2 at 9, 13-14, 17-18.

ORDER GRANTING PETITION FOR A WRIT OF
HABEAS CORPUS IN PART (DKT 2). - 3

On January 23, 2026, petitioner initially filed a joint petition with three other petitioners before this Court. *See* Dkt. 2; *see also Bealter Reyes v. Hermosillo,* No. 2:26-cv-00270-TLF, 2026 WL 507678 at *1 n.1 (W.D. Wash. Feb. 24, 2026). On February 10, 2026, this Court granted the parties' stipulated motion to sever his petition. Dkt. 1.

Respondents argue the Court should deny the severed petition primarily based on petitioner's alleged KST status. *E.g.* Dkt. 4 at 7-8 ("Where, as here, DHS has determined that an individual falls within the KST category and poses national security concerns, the Executive's detention determination warrants substantial deference" and "[u]ntil the administrative process [before the BIA] concludes, Petitioner should remain in detention."). Petitioner responds that he "was never given the chance to respond to [the KST] claim, much less notice regarding the basis for it" and argues that respondents essentially "ask the Court to accept this bare assertion at face value." Dkt. 7 at 1-2.

This Court ordered respondents to provide additional context on petitioner's alleged KST designation. Dkts. 11, 15, 23. Respondents elaborated that the designation originated from the Federal Bureau of Investigation ("FBI"), but otherwise stated that "the processes, sources, and methods by which a person is designated as a KST, as well as the basis for Petitioner's designation, are classified . . ." Dkt. 16 at 1-2; *see also* Dkts. 12, 17, 18, 24.

As a final note, petitioner states he suffered a stroke while in detention, leaving him wheelchair bound. Dkt. 2 at 9. Respondents dispute petitioner's claim that he suffered a stroke, instead stating a neurologist diagnosed him with "Conversion

ORDER GRANTING PETITION FOR A WRIT OF
HABEAS CORPUS IN PART (DKT 2). - 4

Disorder." Dkt. 19 at 3. Respondents acknowledge petitioner requires ongoing medical treatment, and provided declaration testimony from NWIPC's Clinic Director that petitioner received treatment such as physical therapy and an MRI for which they "anticipate a referral neurosurgery once the images are obtained and reviewed." Dkt. 19 at 3-4.

## II.    DISCUSSION

Under the Due Process Clause of the Fifth Amendment, "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law . . . " This right extends to "all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

"Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992). To illustrate, the Supreme Court has held that habeas corpus applies to detainees held at Guantanamo Bay classified as enemy combatants as "few exercises of judicial power are as legitimate or as necessary as the responsibility to hear challenges to the authority of [the Government] to imprison a person." *Boumediene v. Bush*, 553 U.S. 723, 797 (2008).

### A. *Mathews* Factors

Petitioner frames his due process claim through the factors of *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). *E.g.* Dkt. 2 at 15. The Court adopts the reasoning from *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1320-24 (W.D. Wash. 2025), to assess petitioner's claim under the *Mathews* factors which include: (1) The private

ORDER GRANTING PETITION FOR A WRIT OF
HABEAS CORPUS IN PART (DKT 2). - 5

interest affected by the official action; (2) the risk of erroneous deprivation of such interest through the procedures used, and the probable value of additional or substitute procedural safeguards; and (3) respondents' interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Mathews*, 424 U.S. at 335; *Rodriquez Diaz v. Garland*, 53 F.4th 1189, 1206-07 (2022) (assuming without deciding that the *Mathews* test applies "in the immigration detention context.").

### i.    Private Interest Affected

The first *Mathews* factor weighs in petitioners' favor.

As the Court previously held: Individuals on release, even when such release is conditional, have a liberty interest in their continued freedom from custody. *E.A. T.-B.*, 795 F. Supp. 3d at 1321-22; *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025).

Here, it is undisputed respondents conditionally released petitioner in September 2023. Dkt. 2 at 8; Dkt. 4 at 2. It is also undisputed that petitioner remained in the community until he was re-detained in May 2025. Dkt. 2 at 9; Dkt. 4 at 3. Given the petitioner's prior release, the Court finds petitioner has been deprived of an established liberty interest. *See E.A. T.-B.*, 795 F. Supp. 3d at 1321-22.

### ii.    Risk of Erroneous Deprivation

The second *Mathews* factor also weighs in petitioner's favor. *See Mohammadi v. Bondi*, No. C26-420-MLP, 2026 WL 607767 (W.D. Wash. Mar. 4, 2026); *see also Telenchana v. Hermosillo*, No. 2:26-cv-00363-GJL, 2026 WL 696806 at *5 (W.D. Wash. Mar. 12, 2026).

ORDER GRANTING PETITION FOR A WRIT OF
HABEAS CORPUS IN PART (DKT 2). - 6

This Court in *Mohammadi* granted release after reviewing allegations "that the revocation of Petitioner's parole arises out of DHS's suspicion that Petitioner is an ISIS operative." 2026 WL 607767 at *6-7. The Court reasoned that "[n]otably . . . the IJ who presided over Petitioner's hearing on her application for asylum concluded the government's evidence of Petitioner's potential involvement in terrorist activity was entitled to 'no more than minimal weight' and was not sufficient to preclude a grant of asylum." *Id.* *6. Further, "nothing in the record suggests Respondents were even aware of such evidence at the time Petitioner's parole was revoked." *Id.*

*Mohammadi* is distinguishable from the present matter. Here, there is no indication or allegation that petitioner's alleged KST designation was previously reviewed by an IJ or any neutral decisionmaker. *See generally, e.g.* Dkts. 2, 4. Further, respondents' provided Form I-213 asserted petitioner's alleged KST status and indicates respondents were aware of petitioner's alleged KST status at least four days before his re-detention. Dkt. 6-2 at 4.

This Court in *Telenchana* ordered "a prompt post-deprivation bond hearing" after reviewing allegations that "'DHS and partner agencies have acquired information indicating that Petitioner may be a sicario— hitman—for the Jalisco New Generation Cartel.'" 2026 WL 696806 at *5, 13-14. While respondents had presented a declaration asserting this claim, they otherwise failed to provide evidence elaborating on the revocation of petitioner's parole. *Id.* at *11. Further, "it is important to note that, by nature of their initial release on humanitarian parole" petitioner was "found to not be flight risks or dangers to the community." *Id.* at 12. "While circumstances may have changed, Respondents' failure to follow their own regulations created an undue risk of

ORDER GRANTING PETITION FOR A WRIT OF
HABEAS CORPUS IN PART (DKT 2). - 7

erroneous deprivation." *Id.* (citing *Doe*, 787 F. Supp. 3d at 1094 ("given that Petitioner was previously found to not be a danger or risk of flight and the unresolved questions about the timing and reliability of the new information, the risk of erroneous deprivation remains high.")).

Here, as in *Telenchana*, respondents presented a declaration asserting petitioner's alleged KST designation, but otherwise did not substantively elaborate on its basis or context. *E.g.* Dkts. 4, 5, 6-2, 12, 16, 24. Also like in *Telenchana*, it is undisputed that petitioner had been released prior to his re-detention (Dkt. 2 at 8; Dkt. 4 at 2), which would have necessarily required authorities to have previously found him to not be a flight risk or danger to the community. *See Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017) (noting also that "[o]nce a noncitizen has been released, the law prohibits federal agents from rearresting him merely because he is subject to removal proceedings. Rather, the federal agents must be able to present evidence of materially changed circumstances—namely, evidence that the noncitizen is in fact dangerous or has become a flight risk."). As a further example, authorities such as  8 C.F.R. §§ 1003.47(a), (c) and 8 U.S.C. § 1158(b)(2)(A)(iv) necessarily required petitioner pass background checks to be granted asylum. Dkt. 4 at 4 (acknowledging the asylum grant). Based on these considerations, and on the record provided, the Court finds the risk of erroneous deprivation is high.

Respondents also rely on allegations that petitioner violated his release conditions (Dkt. 6-2 at 4) (alleging that in March 2024 petitioner "failed to report in person as instructed"); yet, from the mere allegation petitioner violated his release conditions, "it would not necessarily follow that Petitioner can be detained for those

ORDER GRANTING PETITION FOR A WRIT OF
HABEAS CORPUS IN PART (DKT 2). - 8

violations without a hearing." *E.A. T.-B.*, 795 F. Supp. 3d at 1322; *see also Chicoze-Ezechi v. Noem*, No. 2:26-cv-00145-BAT, 2026 WL 265733 at *1 (W.D. Wash. Feb. 2, 2025) (rejecting respondents' reliance on an allegation that petitioner "'failed three virtual home visits in 2025' 'in violation of ATD . . .').

Therefore, a prompt post-deprivation hearing before an IJ is the proper remedy. 2026 WL 696806 at *13. At the hearing, respondents must provide clear and convincing evidence demonstrating that, if released, petitioner would pose a risk of danger to the community or a flight risk. *Id.*

As a final note, petitioner also argues the "claim that [he] is a [KST] is inadmissible hearsay" (namely respondents' Form I-213) in additional to numerous other arguments under the Federal Rules of Evidence. Dkt. 7 at 5-6. In regards to petitioner's post-deprivation hearing, the Ninth Circuit has held that "[a]lthough the rules of evidence are not applicable to immigration hearings . . . the constitutional and statutory guarantees of due process require that 'the government's choice whether to produce a witness or to use a hearsay statement [not be] wholly unfettered.'" *Hernandez-Guadarrama v. Ashcroft*, 394 F.3d 674, 681 (9th Cir. 2005) (quoting *Saidane v. INS*, 129 F.3d 1063, 1065 (9th Cir.1997)).  "The test is whether the statement is probative and whether its admission was fundamentally fair." *Baliza v. INS*, 709 F.2d 1231, 1233 (9th Cir. 1983). None of the authorities cited by petitioner appear to address direct or collateral review of administrative immigration proceedings. *E.g.* Dkt. 7 at 5-6.

### iii.   Government Interest

The third and final *Mathews* factor also weighs in petitioner's favor.

"[T]he government clearly has a strong interest in preventing [noncitizens] from 'remain[ing] in the United States in violation of our law.'" *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1208 (9th Cir. 2022) (quoting *Denmore v. Kim*, 538 U.S. 510, 518 (2003)).

While "no governmental interest is more compelling than the security of the Nation," *Haig v. Agee*, 453 U.S. 280, 307 (1981), "[t]here are limitations, of course, on the power of the Executive . . . and in the powers authorized by congressional enactments, even with respect to matters of national security." *Ziglar v. Abbasi*, 582 U.S. 120, 143 (2017) (noting also that "national-security concerns must not become a talisman used to ward off inconvenient claims").

While "we 'must weigh heavily in the balance that control over matters of immigration is a sovereign prerogative'" of the executive and legislature, *Rodriguez Diaz,* 53 F.4th at 1208 (quoting *Landon v. Plasencia*, 459 U.S. 21, 34 (1982)), respondents here have not articulated a compelling interest in re-detaining an individual who was on parole without any hearing whatsoever. *Doe*, 787 F. Supp. 3d at 1094 ("The final Mathews factor is simple as the Government's interest in placing Petitioner in detention without a hearing is low" as "effort and cost required to provide Petitioner with procedural safeguards is minimal*");* *see also Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("If the government wishes to re-arrest Ortega at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low.").

The minimal burden of providing a hearing to review the government's bases for re-detention is easily outweighed by the reduction in the risk of erroneous deprivation of

ORDER GRANTING PETITION FOR A WRIT OF
HABEAS CORPUS IN PART (DKT 2). - 10

liberty that would result from this additional safeguard. *See Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017).[2]

**B. Remedy**

As the above factors weigh in petitioner's favor, the Court holds that, under these circumstances, a prompt post-deprivation hearing is consistent with due process. *See Telenchana*, 2026 WL 696806 at *13. This hearing must be held within 10 calendar days of this Order.[3]

### III.   CONCLUSION

Accordingly, the Court **GRANTS IN PART** the petition for habeas corpus and **ORDERS:**

1) Respondents **SHALL** provide adequate due process to petitioner and hold a **post-deprivation hearing** within **10 days** of the filing date of this Order (*see* Fed. R. Civ. P. 6(a)(1)).

- This hearing **SHALL** be conducted by an immigration judge, in line with *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011), where respondents will bear the burden of proving by clear and convincing evidence that petitioner is a flight risk or a danger to the community, and that no alternatives to detention would mitigate those risks.

---

[2] Respondents also argue that petitioner is mandatorily detained under 8 U.S.C. § 1225 as opposed to 8 U.S.C. § 1226. *E.g.* Dkt. 4 at 8-10. The Court need not reach this issue. Even assuming without deciding that § 1225 applies as respondents assert, the Court finds that petitioner's Due Process rights were violated, as discussed above, and he is entitled to a post-deprivation hearing. *See Singh v. Bondi*, 2:26-cv-00582-TLF, 2026 WL 799706 at *7 (W.D. Wash. Mar. 23, 2026).

[3] To the extent petitioner requests additional injunctive relief limiting any potential future re-detention, *e.g.* Dkt. 2 at 18-19, the Court declines to grant this relief and adopts the reasoning of *Saadhom v. Bondi*, No. 2:26-cv-00425-TL, 2026 WL 698786, at *10 (W.D. Wash. Mar. 12, 2026); *see also Telenchana*, 2026 WL 696806 at *14 (declining to impose additional restrictions "given . . . the varying circumstances that may warrant their future re-detention . . .").

ORDER GRANTING PETITION FOR A WRIT OF
HABEAS CORPUS IN PART (DKT 2). - 11

- In the event petitioner is released, respondents **SHALL** return petitioner's personal property, including any personal identification documents and employment authorization documents.

2) The parties **SHALL file a joint status report within two days** of this post-deprivation hearing (*see* Fed. R. Civ. P. 6(a)(1)) confirming petitioner has received a hearing in compliance with the above Order and reporting whether petitioner was released, including the date and time of his release from custody.

3) The Court will consider any post-judgment motion for attorney fees and costs, as requested in the petition. Dkt. 2 at 19.

Dated this 8th day of April, 2026.

Theresa L. Fricke
United States Magistrate Judge

ORDER GRANTING PETITION FOR A WRIT OF
HABEAS CORPUS IN PART (DKT 2). - 12